# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SAMANTHA HOWARD ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ |
| v. ) | |
| ) | |
| CITY OF SEDALIA, MISSOURI ) | |
| D/B/A BOTHWELL REGIONAL ) | |
| HEALTH CENTER, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW, Plaintiff, Samantha Howard (hereinafter "Plaintiff" or "Howard"), by and through her counsel of record, and for her claims against the City of Sedalia, Missouri d/b/a Bothwell Regional Health Center (hereinafter "Defendant"), states the following:

## PARTIES

1. Plaintiff, Samantha Howard, is a Kansas resident, residing in Johnson County, Kansas.

2. Defendant, the City of Sedalia, Missouri, is a Missouri municipality that operates Bothwell Regional Health Center, a regional hospital located at 501 E. 14th Street in Sedalia, Missouri.

3. Defendant employed Howard as a pharmacist from April 1, 2019 through September 23, 2020.

## JURISDICTION

4. This action is brought for discrimination in employment pursuant to the American with Disability Act of 1990, 42 U.S.C. § 12112 et seq. (hereinafter the "Act"), and this Court therefore has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Western District of Missouri because a substantial part of the events and omissions giving rise to Howard's claim occurred in Sedalia, Missouri, which is located in this Court's judicial district.

## PLAINTIFF'S DISABILITY

6. At or around months of age, physicians diagnosed Samantha Howard with Type 1 Diabetes, a chronic, progressive autoimmune disease which, in Ms. Howard's case, has led to hypoglycemic unawareness.

7. Hypoglycemic unawareness is a complication of diabetes in which the patient is unaware of a deep drop in blood sugar because it fails to trigger the secretion of epinephrine which generates the characteristic symptoms of hypoglycemia (such as palpitations, sweating, anxiety) that serve to warn the patient of the dropping blood glucose.

8. Hypoglycemic unawareness can cause prolonged exposure to hypoglycemia, resulting in a seizure, loss of consciousness, or brain damage.

9. The development of hypoglycemic unawareness also makes intensified blood glucose control more difficult and puts the patient at risk for severe hypoglycemia-related complications.

10. Ms. Howard's diabetes and related hypoglycemic unawareness is a disability, as defined by the Act, i.e., it is a physical impairment that substantially limits major life activities, which as defined by the Act includes the operation of major bodily functions, including but limited to, endocrine functions. 42 U.S.C.A. 12102(2)(B).

11. In 2020, and as a result of her development of hypoglycemia unawareness, Howard's physician recommended that she apply for a service animal, specifically a dog, that is highly trained to alert patients of impending drops in a patient's blood sugar.

12. Thereafter, Howard took steps necessary to procure the service dog as recommended by her physician, applying to purchase an animal through an entity that specializes in training diabetic service dogs.

## PLAINTIFF'S EMPLOYMENT AND REQUEST FOR ACCOMMODATION

13. Howard is a pharmacist, licensed to practice in the state of Missouri.

14. During the relevant time frame, Plaintiff was employed by the Defendant as a pharmacist at Bothwell Regional Health Center.

15. In June 2020, Howard received notification that there was a diabetic service dog available for her.

16. Shortly thereafter, Howard spoke to Defendant's human resource director, Lisa Irwin, and requested permission for the service dog to accompany her at work (hereinafter referred to as the "accommodation"), an accommodation which was reasonable on its face.

17. At that time, Howard provided Defendant with a letter from her physician, confirming that the service animal was necessary to help warn in advance of blood sugar lows.

18. During the conversation with Irwin, and prior to having conducted any investigation, Irwin told Howard that the entire pharmacy was a sterile environment and that an animal in the pharmacy would compromise that environment.

19. Irwin provided Howard with forms under the auspices of giving further consideration to the requested accommodation.

20. At Irwin's request, on or about July 14, 2020, Howard submitted a formal Request for Accommodation using forms specified by Bothwell, answering all applicable questions and providing detailed information on an attached additional sheet of paper.

21. After receipt of the formal request, Irwin created yet another "ADA form" and directed Howard to provide additional information from her physician to document her condition.

22. On July 24, 2020, Irwin sent a letter to Howard acknowledging that while she had filled out the Request for Accommodation as Irwin requested: "as of the date of this letter, you still have not provided anything other than the original letter from your physician."

23. In that correspondence, Irwin stated that Bothwell still had concerns regarding the requested accommodation, acknowledging that while the entire pharmacy may not be a sterile environment as she had originally represented, Ms. Howard's workstation was located close to the pharmacy ante room which provides access to the pharmacy clean room. According to Irwin, Bothwell was "concerned that having an animal that close to the sterile area for an extended period of time (hours each day) could lead to contamination."

24. While purportedly engaging in an interactive process to assess the accommodation and work through the issue with Howard, Bothwell took little to no action to evaluate the ***actual*** degree of risk posed to contamination arising out of the accommodation.

25. Rather, Bothwell asserted the accommodation was unreasonable, again citing to concerns about sterility and "various regulations and guidance" that "required" the pharmacy to be a sterile area; though Bothwell never identified any specific laws, regulations and/or guidance that prohibited the accommodation requested.

26. Thereafter, Howard provided various suggestions to reduce whatever minimal risk may be associated with having her service animal in the vicinity of the clean room, all of which were summarily rejected by Bothwell.

27. On information and belief, Bothwell did not act in good faith, because it knew or had reason to know that its HVAC systems in the pharmacy did not meet industry standards.

28. Prior to Howard's demand, Bothwell did not take precautions to maintain the pharmacy, outside of the clean room, as a sterile environment, did not treat it as a sterile environment, did not maintain it with cleanliness standards that would be expected of a sterile environment, and otherwise acted inconsistently with its position that it denied Howard the requested accommodation based on concerns related to sanitation.

29. Ultimately, because Bothwell did not engage in the interactive process in good faith, Howard was compelled to resign her position to seek alternative employment and to continue to advance in her chosen profession.

30. Thereafter, on or about October 7, 2020, Howard filed a Charge of Discrimination with the EEOC, attached hereto as Exhibit A.

31. On or about November 17, 2020, Howard requested a "right to sue" letter from the EEOC.

32. On December 4, 2020, the EEOC issued its Notice of Right to Sue, attached hereto as Exhibit B.

33. This action is timely, in that it was field within 90 days of the Notice of Right to Sue.

## COUNT I – DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE

34. The allegations stated in paragraphs 1 through 32 of the Complaint are incorporated herein by reference.

35. Samantha Howard's diabetes constitutes a disability, as it is defined by the Americans with Disability Act.

36. Samantha Howard was qualified to perform her work as a pharmacist at the time she requested the accommodation; and at all times relevant hereto, Howard remained qualified to perform the work with that accommodation.

37. As articulated herein, Samantha Howard requested an accommodation, specifically to have her service dog accompany her to work in the non-sterile areas of the pharmacy, which accommodation was reasonable and did not create an undue burden on Bothwell.

38. The accommodation Ms. Howard requested would have enabled her to perform the essential functions of her position.

39. Bothwell refused to make the accommodation requested, and did not engage in a good faith effort to assist Howard in seeking the accommodation.

40. Howard could have been reasonably accommodated but for the employer's lack of good faith.

41. Bothwell acted with the intention of discriminating against Howard, specifically, intending to refuse an accommodation that Bothwell knew was reasonable.

42. Howard was forced to resign her position because it was clear she would not be permitted to practice her chosen profession with Bothwell, in that Bothwell's conduct made it clear that Bothwell was not acting in good faith with respect to her requested accommodation.

43. Bothwell's conduct, as described herein, was designed to secure Howard's resignation; which was ultimately successful when Howard resigned in September 2020.

WHEREFORE, Ms. Howard respectfully requests that the Court enter judgment in her favor, and award all damages to which she is entitled under the law, including but not limited to reinstatement, back

pay, front pay, compensatory damages, as well as her attorneys fees and other costs and expenses of this litigation.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through her counsel of record, hereby demands a jury trial.

Respectfully Submitted,

/s/ *Jennifer R. Johnson*
Jennifer Johnson, SC No. 59197
JrJ Law Firm, LLC
1201 NW Briarcliff Parkway
Briarcliff West, 2nd Floor
Kansas City, Missouri 64116
Jennifer@jrjlawkc.com
(816) 274-2157