# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SAMANTHA HOWARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF SEDALIA, MISSOURI ) <br> D/B/A BOTHWELL REGIONAL ) <br> HEALTH CENTER, ) <br> ) <br> Defendant. ) | Case No. 2:21-CV-04034-MDH |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant City of Sedalia, Missouri d/b/a Bothwell Regional Health Center ("Bothwell") hereby respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law in its favor and against Plaintiff Samantha Howard ("Howard").

# TABLE OF CONTENTS

LEGAL STANDARD ..................................................................................................................1

ARGUMENT ................................................................................................................................2

    I.    HOWARD HAS FAILED TO INTRODUCE EVIDENCE THAT THE SERVICE DOG SHE REQUESTED IS ACTUALLY AN "ACCOMMODATION" UNDER THE AMERICANS WITH DISABILITIES ACT, BECAUSE SHE HAS NOT SHOWN THAT THE DOG ACTUALLY DOES ANYTHING TO TREAT OR AMELIORATE HER DIABETES OR HYPOGLYCEMIC UNAWARENESS ...............................2

    II.    HOWARD HAS FAILED TO INTRODUCE EVIDENCE THAT SHE REQUIRES A SERVICE ANIMAL TO PERFORM THE ESSENTIAL FUNCTIONS OF THE JOB, OR THAT SHE WAS DENIED THE BENEFITS AND PRIVILEGES OF EMPLOYMENT. .........................................8

        A.    Howard has failed to introduce evidence that she needs to have a service animal in the main pharmacy area to help her perform the essential functions of her job .......................................................................8

        B.    Howard has failed to introduce evidence that she was denied the benefits or privileges of employment during the ADA accommodation process ............................................................................11

CONCLUSION ...........................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arabian Agric. Servs. Co. v. Chief Indus., Inc.*,
 309 F.3d 479 (8th Cir. 2002) ...................................................................................................1

*Arndt v. Ford Motor Co.*,
 247 F. Supp. 3d 832, 858, 866 (E.D. Mich. Mar. 29, 2017) .....................................................9

*Hammel v. Eau Galle Cheese Factory*,
 407 F.3d 852, 862 (7th Cir. 2005) ............................................................................................9

*Hopman v. Union Pac. R.R.*,
 Case No. 4:18-cv-00074-KGB, 2022 WL 963662 (E.D. Ark. Mar. 30, 2022) .............2, 11, 12

*Hopper v. Hallmark Cards, Inc.*,
 87 F.3d 983 (8th Cir. 1996) ......................................................................................................2

*Hustvet v. Allina Health System*,
 No. 17-2963, 910 F.3d 399 (8th Cir.(Minn.) Dec. *07, 2018)* ...................................................3

*Liljedahl v. Ryder Student Transp. Servs., Inc.*,
 341 F.3d 836 (8th Cir. 2003) ....................................................................................................3

*Mason v. Sun Recycling, LLC*,
 Civil Case No.: GLS-18-2060, 2020 WL 1151046 (D. Md. Mar. 9, 2020) ..............................4

*Nuzum v. Ozark Automotive Distributors, Inc.*,
 432 F.3d 839 (8th Cir. 2005) ....................................................................................................3

*Penn-Hicks v. DeJoy*,
 Case No. 18-0204-CV-W-BP, 2021 WL 5534690 (W.D. Mo. May 17, 2021) ........................4

*Roberson v. AFC Enters., Inc.*,
 602 F.3d 931 (8th Cir. 2010) ....................................................................................................2

*Stults v. Am. Pop Corn Co.*,
 815 F.3d 409 (8th Cir. 2016) ....................................................................................................1

*Taylor-Novotny v. Health Alliance Medical Plans, Inc.*,
 772 F.3d 478 (7th Cir. 2014) ....................................................................................................4

*US Airways, Inc. v. Barnett*,
 535 U.S. 391 (2002) ..................................................................................................................3

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000)............................................................................................................2

*Wood v. Crown Redi-Mix, Inc.*,
    No. 02-3506, 339 F.3d 682 (8th Cir.(Iowa) Aug.07, 2003).......................................3

**Federal Statutes**

Americans with Disabilities Act ................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 50(a)(1)................................................................................................1

Rule 51(a).....................................................................................................................2

**Regulations**

29 C.F.R. § 1630.2(o)(1)(i)-(iii)....................................................................................8

29 C.F.R. § pt. 1630, Appendix ...................................................................................8

Having now been fully heard in her case-in-chief, Howard has failed to present any evidence relating to several elements of her cause of action for failure to accommodate under the Americans with Disabilities Act ("ADA"). Specifically: (1) she has not established that her requested service dog can actually detect changes in her blood-sugar levels and (2) she has not established that bringing a dog into the Bothwell pharmacy would enable her to perform the essential functions of her job or was one of the "benefits and privileges" of her employment. In consequence, no reasonable jury could find that there is a sufficient evidentiary basis to rule in Howard's favor on those issues. And since, as a matter of law, Howard must prevail on both issues in order to prevail, Bothwell is entitled to judgment as a matter of law in its favor on her claim.

## LEGAL STANDARD

The Federal Rules of Civil Procedure allow a defendant to move for judgment in its favor at the close of the plaintiff's case-in-chief, where (a) on the basis of the evidence adduced, no reasonable jury could find in favor of the plaintiff on an issue and (b) if that issue is decided against the plaintiff then the plaintiff cannot establish one of the elements of her claim as a matter of law. *See* Fed. R. Civ. P. 50(a)(1) ("If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."); *Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 418 (8th Cir. 2016).

"[J]udgement as a matter of law is appropriate '[w]hen the record contains no proof beyond speculation to support [a] verdict.'" *Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 482 (8th Cir. 2002), quoting *Sip-Top, Inc. v. Ekco Group, Inc.*, 86 F.3d 827, 830 (8th Cir. 1996). When considering a motion for judgment as a matter of law, the Court should err on the side of

1

KC 19178863.11

Case 2:21-cv-04034-MDH   Document 127   Filed 09/15/22   Page 5 of 18

the non-moving party and "(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tends to prove, (3) give the nonmovant the benefit of all reasonable inference, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn." *Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933 (8th Cir. 2010); *see also Hopman v. Union Pac. R.R.*, Case No. 4:18-cv-00074-KGB, 2022 WL 963662, at *2 (E.D. Ark. Mar. 30, 2022).

However, this burden is not insuperable. Where a plaintiff introduces no evidence going to one of the elements of his or her claim, judgment as a matter of law is appropriate. *See Roberson*, 602 F.3d at 934-35 (in premises liability case, plaintiff's failure to introduce evidence concerning defendant's knowledge of dangerous condition justified district court's grant of judgment as a matter of law). Likewise, where the only evidence submitted on a given topic is inadmissible, a Rule 51(a) motion may be granted. *See Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) ("Inadmissible evidence contributes nothing to a 'legally sufficient evidentiary basis.'"), citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). Nor is the Court required to afford the non-moving party "the benefit of unreasonable inferences" – *i.e.*, inferences that cannot be drawn "without resort to speculation." *Hopper v. Hallmark Cards, Inc.*, 87 F.3d 983, 988 (8th Cir. 1996).

## ARGUMENT

I. **HOWARD HAS FAILED TO INTRODUCE EVIDENCE THAT THE SERVICE DOG SHE REQUESTED IS ACTUALLY AN "ACCOMMODATION" UNDER THE AMERICANS WITH DISABILITIES ACT, BECAUSE SHE HAS NOT SHOWN THAT THE DOG ACTUALLY DOES ANYTHING TO TREAT OR AMELIORATE HER DIABETES OR HYPOGLYCEMIC UNAWARENESS.**

The purpose of the ADA is to enable people with disabilities to participate in society – including the world of work – on an equal footing with non-disabled people. It accomplishes this goal through the mechanism of reasonable accommodations, which are directed at the limitations

KC 19178863.11

that the disability creates that limit the individual's ability to work. Like a shim that helps a wobbly table sit level on the floor, accommodations adjust for the limitations that the disability creates to enable the person to work. But, crucially, the ADA's mandate is limited to *accommodations*. The ADA does not give disabled people an untrammeled right to unilaterally decide the conditions of their employment; it entitles them to receive *reasonable accommodations*.

One attribute a reasonable accommodation must possess, both as a matter of logic and law, is that it must actually *do something* to ameliorate the underlying limitation. As the United States Supreme Court has noted, the statute's use of the word "accommodation" itself establishes an efficacy requirement. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness. An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations.") Thus, a proposed "accommodation" that does not actually work, or that "works" only via the placebo effect, or that is entirely unrelated to the individual's limitation, is not actually an *accommodation* at all, and therefore cannot be a "reasonable accommodation."

Building on this insight, the Eighth Circuit has repeatedly held that "in order for an accommodation to be reasonable, it must relate to the individual's disability." *Hustvet v. Allina Health System,* No. 17-2963, 910 F.3d 399, 410 (8th Cir.(Minn.) Dec*. 07, 2018); see also Nuzum v. Ozark Automotive Distributors, Inc.*, 432 F.3d 839, 383 (8th Cir. 2005) ("The right to an accommodation in employment is a separate question from disability. This court has held that a workplace accommodation must be related to the limitation that rendered the person disabled."); *Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 842 (8th Cir. 2003) ("The MHRA requires an employer to accommodate known limitations so an employer can perform her job, but a requested accommodation must relate to the limitation."); *Wood v. Crown Redi-Mix, Inc.,* No.

02-3506, 339 F.3d 682, 687 (8th Cir.(Iowa) Aug.07, 2003) ("Where the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity limited and the accommodation sought."); *see also Penn-Hicks v. DeJoy*, Case No. 18-0204-CV-W-BP, 2021 WL 5534690, at *8 (W.D. Mo. May 17, 2021) ("An employee cannot ask for any accommodation she wants – instead, there must be a causal connection between the limitations imposed by the disability and the accommodation sought.") (cleaned up).

The Eighth Circuit's case law is consistent with the approach taken in other jurisdictions, which also require that the accommodation sought must actually do something to ameliorate or alleviate the limitations imposed by the underlying disability. *See, e.g., Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, 772 F.3d 478, 493 (7th Cir. 2014) (employer did not violate ADA by refusing to agree to requested accommodation where plaintiff presented no evidence that the requested accommodation "would alleviate her illness-related fatigue"); *Mason v. Sun Recycling, LLC*, Civil Case No.: GLS-18-2060, 2020 WL 1151046, at *12 (D. Md. Mar. 9, 2020) ("In other words, 'an accommodation must be sought as a means to alleviate disability-induced limitations that impact an employee's job-related activities[.]'"), quoting *Hamel v. Board of Educ. of Hartford County*, JKB 16-2876, 2018 WL 1453335, at *12 (D. Md. Mar. 23, 2018).

Here, Howard has failed to introduce any competent evidence that her proposed accommodation actually does anything to alleviate the limitations imposed by her putative disabilities. Her requested accommodation is a service dog that can, allegedly, detect changes in her blood-sugar levels and alert her to those, which she contends helps address the limitations imposed by her diabetes and/or hypoglycemic unawareness. However, Howard has presented no competent evidence to support the proposition that her dog can actually do that. She has presented

4

KC 19178863.11
Case 2:21-cv-04034-MDH   Document 127   Filed 09/15/22   Page 8 of 18

no scientific or expert testimony supporting the contention that her dog can actually detect her blood-sugar levels, or indeed that any service dog can be trained to do that. Nor has she presented any evidence of the mechanism that she contends her dog uses, or the training she underwent, to allegedly monitor her blood sugar levels.

It is true that Howard has testified about her experiences with her dog, and about discrete instances in which she witnessed Corry engaging in behaviors that she stated are consistent with the dog detecting changes to her blood-sugar levels and alerting her. When asked how Corry helps her manage her conditions, Howard testified that Corry is a "safety net" that allows her not to focus as much on managing her sugars, and reduces her anxiety constantly worrying about sugar. She testified that Corry alerts when she gets to "certain levels" so she does not have to always monitor her blood sugar. But she never provided a record to support these allegations about Corry's accuracy.

Because Howard provided absolutely no testimony about whether Corry misses any highs or lows, there is no way to *actually prove* that Corry really is "accurate." She did not testify that her blood sugar levels are consistently in a certain range, or at a certain level, at the times when Corry alerts her. To the contrary, she testified that there has been times which Corry alerts, she checks her sugars, and her level is 110, which is a normal range. But 15-20 minutes later, when Corry is still alerting, she checks again, and it had dropped to 60. This is not consistency in alerts, and she did not testify that the type of alert for the 110 (normal range) is *different* from the alert at 60 (hypoglycemic).

Howard testified about the training she attended with her dog, and that she passed a public access test. This test specifically states that "it is to ensure that the client has control over the dog and the team is not a public hazard. This test is NOT intended as a substitute for the skill/task test

5

KC 19178863.11

that should be given by the program." (Trial Ex. P-7). Howard did not ever testify, nor provide any evidence, that she and Corry took and/or passed a skill/task test. She provided no testimony that her dog was actually trained to alert to highs and lows in her blood sugar. The training skills and commands, which she testified Corry knew most of upon leaving her week-long training, do not at all relate to diabetes, hypoglycemic unawareness, or any sort of alerting. (Trial Ex. J-4.) Howard has testified that Corry's alerts start with a concentrated stare, and that nothing is going to break her concentration until she stops what she is doing to check her sugar. If she does not respond, Corry will paw at her, and at night she does a yip to wake her up. She did not testify that Corry was trained to alert in these manners. She did not testify that Corry was trained to alert to her high and low blood sugars, how she was trained to do so, or any ongoing training that she conducts with Corry. She agreed that Corry's putative alerts can vary – staring, pawing, or yipping. She admitted that she has no record of false positives or false negatives.

This testimony is relevant to Howard's state of mind and to the question of whether Howard participated in the interactive process in good faith. It is relevant, in other words, to Howard's *beliefs* about the dog. But it is not evidence that the dog is *actually* doing the thing Howard believes it is doing. Testimony about what the dog is actually doing requires knowledge of things outside of Howard's perception – it requires insight into what is actually going on in the dog's brain, of what is actually causing the dog to engage in the behaviors that Howard believes are the result of it detecting changes in her blood-sugar levels. It requires knowledge of her blood sugar trends at all times, proving that Corry does not miss any vital highs or lows. Because these facts are beyond Howard's perception, or indeed the perception of *any* fact witness, they must be proved by expert testimony.

Determining whether the dog can actually detect Howard's blood-sugar levels would require rigorous scientific analysis. At a minimum, it would require rigorously monitoring both the dog's behavior and Howard's blood-sugar levels, looking not just for instances in which the dog appears to have successfully detected a change in Howard's blood-sugar levels but also for false positives (instances in which the dog signals but there is no change to Howard's blood-sugar levels) and false negatives (instances in which Howard's blood-sugar levels change but the dog fails to signal). Howard has obviously not engaged in this kind of thorough analysis. And in the absence of this kind of rigor, Howard's testimony is nothing more than confirmation bias in action – she believes the dog can detect her blood-sugar levels, so she notices instances in which the dog appears to have done this and does not notice instances in which the dog fails to do so. No reasonable jury could rely on this testimony as evidence that the dog is actually efficacious at detecting changes in Howard's blood-sugar levels.

There is simply no competent evidence supporting the proposition that the dog can actually do what Howard claims (and no doubt sincerely believes) that it can do – detect her blood-sugar levels and alert her to dangerous changes to them. On the basis of the evidence introduced in Howard's case-in-chief, the dog's efficacy is indistinguishable from that of a lucky penny, or the use of essential oils to cure illness. From the evidence presented, no reasonable jury could find that the dog actually alleviates her medical condition. As a consequence, no reasonable jury could find that the dog was an "accommodation" within the meaning of the ADA based solely on the evidence Howard provided.

KC 19178863.11

## II. HOWARD HAS FAILED TO INTRODUCE EVIDENCE THAT SHE REQUIRES A SERVICE ANIMAL TO PERFORM THE ESSENTIAL FUNCTIONS OF THE JOB, OR THAT SHE WAS DENIED THE BENEFITS AND PRIVILEGES OF EMPLOYMENT.

The ADA's implementing regulations clearly define the term "reasonable accommodation." In other words, as a threshold matter, an accommodation request need be considered a "reasonable accommodation" under the ADA unless it fits into one of these three categories: (1) that the accommodation was necessary to enable disabled applicants to apply, (2) that the accommodation was necessary to enable the disabled employee to perform the essential functions of her position, or (3) that the accommodation was necessary to ensure the disabled employee equal access to the "benefits and privileges of employment" that are enjoyed by "other similarly situated employees without disabilities." *See* 29 C.F.R. § 1630.2(o)(1)(i)-(iii). Howard, as she must because she was working for Bothwell, cannot proceed under the first definition, and therefore must prove that her request is a "reasonable accommodation" under either the "essential functions" or the "benefits and privileges of employment" test. (Doc. 108 at 9-30.) However, because Howard has not shown that the requested accommodation "enables" her to perform the essential functions of her job, and because she has not shown that her requested accommodation would provide her with equal access to the benefits and privileges of employment at Bothwell, she cannot prevail because she cannot prove she has requested a "reasonable accommodation" under the ADA.

> A. *Howard has failed to introduce evidence that she needs to have a service animal in the main pharmacy area to help her perform the essential functions of her job*

"The obligation to make reasonable accommodation is a form of non-discrimination. . . . This obligation does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability." 29 C.F.R. § Pt. 1630, App. "An employer would generally not be required to provide . . . as an accommodation any amenity or

8

convenience that is not job-related." Id. "The ADA is designed to prevent discrimination against disabled persons who are otherwise qualified for a job, but as a result of a disability are unable perform the job's essential functions without reasonable accommodations." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005) (emphasis added). A case from the Eastern District of Michigan has addressed this element, finding that an employee who failed to prove that his service animal assisted him in performing the essential functions of his job could prevail under an ADA failure to accommodate claim. *Arndt v. Ford Motor Co.*, 247 F. Supp. 3d 832, 858, 866 (E.D. Mich. Mar. 29, 2017), aff'd, 716 F. App'x 519 (6th Cir. 2017).

Howard has not provided any evidence that her "service dog would be of assistance to [her] with regard to the actual duties [she] is required to perform on a daily basis." Id. at 853. Her doctors' notes do not state that her dog helps her fill prescriptions, compound medications, or perform any of her duties as a pharmacist. (Trial Ex. J-6, J-11.) She has no testimony that she requested the service animal "specifically for the workplace." Id. at 854. Howard has not provided any testimony that her dog trainers went to the Bothwell pharmacy, or any pharmacy for that matter, to specifically train the animal to be in that environment. Id. at 855. A service animal who achieves the goal the plaintiff is seeking—betterment of her life—is simply "not sufficient to" meet plaintiff's burden to prove that her animal helps her perform the essential functions of her job.

In response to the question of how Corry helps Howard do her job, Howard testified that she is "an additional safety net" and that she reduces the times her sugar goes to the "danger zone." Corry "frees up her mind up a bit" and allows her to "focus" and not be so anxious about her sugars. She did not explicitly state how these allegations help her perform her job. These are

KC 19178863.11

general allegations about how Corry helps her health, but are not allegations about how Corry enables her to complete her essential job functions.

The evidence has shown that, in fact, Howard was qualified to perform her job prior to acquiring her service animal. Dr. Nicholson testified that she had no issues during her time at Bothwell performing her duties. Even Howard herself stated that the animal would not enable her to perform the essential functions of her job, but rather she wanted the dog in order to "enhance my ability to function in all aspects of my role as a pharmacist." (Trial Ex. J-8.) (emphasis added). She testified that she had no performance issues at Bothwell, and that she kept her job after an evaluation, so she assumed she met expectations. In fact, she testified she was nominated for two Bothwell star awards. The ADA does not provide for accommodations that enhance an employee's job performance—just to allow them to perform, at a base level, the essential functions of the job. Throughout her request for accommodation packet or her testimony, she never stated a specific, job-related task that her service animal can help her perform.

Further, Howard's disability did not stem from, or was affected by, her work at Bothwell—her blood sugars did not fluctuate in response to any specific job duties. Her blood sugars fall and rise due to the way her own endocrine system functions. To compare: a person who types all day and develops carpal tunnel requests an accommodation for an ergonomic keyboard. If she does not receive this request, her carpal tunnel becomes worse directly due to her job – typing on a keyboard. Giving her a new keyboard does not just enhance her ability to perform her job, but allows her to perform the essential function of typing, and mitigates any injury directly caused by the job. Comparatively, Howard's disability is not specifically triggered by anything at her job. She did not testify that compounding drugs, overseeing technicians, or filling prescriptions causes her to have hypoglycemic episodes. Even if she was not at work, she would (allegedly) still be

experiencing these issues. The job itself does not cause them, and she therefore does not need the dog to relieve pain or symptoms of her disability that are directly caused by her work environment.

Howard has not shown that her animal enables her to perform a single essential function of her job, that her animal assists her in performing the essential functions of her job, or that her work environment specifically affects her alleged disabilities. Accordingly, she has not shown that her request is a "reasonable accommodation" under the ADA.

> B. *Howard has failed to introduce evidence that she was denied the benefits or privileges of employment during the ADA accommodation process*

Alternatively, Howard alleges her accommodation request was reasonable because it would enable her to enjoy the equal benefits and privileges or employment that are enjoyed by other Bothwell pharmacists. When asked about the benefits and privileges of her job that Corry allows her to access, Howard testified that her coworkers could "manage their conditions" and that her employer was "telling her what she can and can't do" "when they haven't talked to my physician or know anything about my diabetes." She did not provide testimony that any of her former coworkers have any conditions that need to be managed. She did not testify that Bothwell was actually telling her what to do, or that a "benefit" of her employment was "not being told what to do" in regards to medical conditions. She did not testify that any other Bothwell employees were allegedly being told how to treat their medical conditions.

A recent case from the Eastern District of Arkansas is instructive. In *Hopman*, the employee sought to bring a service dog into the workplace to address his post-traumatic stress disorder. *See* 2022 WL 963662 at *1. After his employer rejected this request, he sued, arguing that he needed the dog "to enjoy equal benefits and privileges of employment of working without the burden and pain of his post-traumatic stress disorder[.]" *Id.* The *Hopman* plaintiff did not contend that his service dog was necessary to enable him to perform the essential functions of his

11

KC 19178863.11

position and rested solely on the benefits and privileges of employment prong of the test. *Id.* The *Hopman* court permitted the case to go to a verdict (which went in favor of the plaintiff) but then granted the employer's motion for judgment notwithstanding the verdict on the grounds that the plaintiff had not submitted a "legally sufficient evidentiary basis" for the conclusion that he had been denied the privileges and benefits of employment. *Id.* at *2, *12. To prevail under a "benefits and privileges of employment" theory, the plaintiff had to show that the accommodation he sought would put him on an equal footing with other, non-disabled employees by giving him a benefit they also received. *See id.* at *5.

Since the *Hopman* plaintiff had not shown that other, non-disabled employees were allowed to bring dogs into the workplace, doing so was not a benefit or privilege of employment and he had not been denied anything that his non-disabled colleagues were entitled to. *See id.* As the *Hopman* court noted, this conclusion is supported by an extensive body of case law from a multitude of federal courts. *See id.* at *5-*8. The same is true here. Howard has not introduced any evidence that other Bothwell employees are permitted to bring dogs into the pharmacy. Consequently, bringing a dog into the pharmacy is not one of the "benefits and privileges of employment" at Bothwell. Her claim thus necessarily fails as a matter of law, and Bothwell is entitled to judgment as a matter of law in its favor on that basis.

## CONCLUSION

Wherefore, for the reasons stated above, Defendant Bothwell respectfully requests that this Court enter judgment as a matter of law in its favor.

KC 19178863.11

Respectfully Submitted,

SPENCER FANE LLP

 /s/ Casey P. Murray
Casey P. Murray, MO Bar No. 58741
Amanda L. Lewandowski, MO Bar No. 73398
1000 Walnut Street, Suite 1400
Kansas City, MO  64106
Tel:  816.474.8100
Fax:  816.474.6321

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

  This will certify that a true copy of the foregoing was served via this Court's ECF system on September 15, 2022, to the following counsel of record:

Jennifer Johnson
Fagan & Emert, LLC
5540 West 110th Street, Ste. 300
Overland Park, Kansas 66211
jjohnson@faganemert.com

                */s/ Casey P. Murray*
                Attorney for Defendant